*Nov. Term,
1857.*

HUNT
v.
COON.

---

### HUNT and Another *v.* COON and Wife.

Where land was devised to a son, subject to the maintenance of his mother, and he allowed her to sell it, joining her in a deed to the purchaser, and directing the notes for the purchase-money to be made payable to her,—

*Held*, 1. That the devisee had no claim against the purchaser for the purchase-money; nor could he, even if the notes had been thus executed to defraud his creditors, question his mother's title to them.

2. That the purchaser could not be held as garnishee in respect of the purchase-money, in an attachment suit against the devisee.

APPEAL from the *Henry* Court of Common Pleas.

DAVISON J.—*James Coon* and *Martha Coon*, his wife,

*Thursday,
December 3.*

formerly *Martha Bales*, caused a writ of attachment to be issued out of the *Henry* Common Pleas, against one *William Rider*. The cause of action set forth in the writ, was a judgment recovered by *Martha Bales*, while unmarried, against him, *Rider*, in the *Henry* Circuit Court, for 999 dollars. The writ was returned no property found.

After this, and while the attachment suit was pending, *James* and *Martha Coon* filed with the clerk of said Common Pleas Court, an affidavit, wherein they allege that *Wilkinson Hunt* and *Elizabeth Rider* are indebted to *William Rider*, the attachment-defendant, and have the agency and control of property, monies, credits and effects belonging to him, &c. Upon the filing of this affidavit, a summons was issued against them, *Wilkinson* and *Elizabeth*, as garnishees.

At the *July* term, 1855, *James* and *Martha Coon* recovered a judgment in the attachment suit, against *William Rider*, for 1,125 dollars. And at the same term, the garnishees, who are the present appellants, appeared, and to the affidavit answered severally, that they were not, nor was either of them, indebted to *William Rider*, nor had they, or either of them, any agency of, or control over, any property, monies, credits or effects belonging to him, &c. The issue thus made was submitted to the Court for trial. It was shown that *William Rider* was entitled, under the will of his father, who died in the year 1846, to 120 acres of land in *Henry* county, subject to the maintenance of his mother, the said *Elizabeth Rider*, which will provided that upon the death of *William*, or his failure to maintain his mother, the executors therein named should make such other arrangements for her support as they might think best. It was also shown that *Elizabeth*, herself, was an executrix under the will. During the trial, *Hunt*, one of the garnishees, was called by the plaintiffs, and in his examination stated that he purchased a tract of land, 40 acres, of *William Rider*, for 300 dollars, paid him the purchase-money, and, on the 11th of *February*, 1852, received his deed for the land; that when the above purchase-money was paid, the suit in which the said *Martha Bales* recov-

ered her judgment against *William Rider*, had not been commenced; that on the 6th of *December*, 1852, he, *Hunt*, purchased a tract of 40 acres of *Elizabeth Rider*, *William's* mother, for 600 dollars, paid 200 dollars in hand, and gave her his notes for the residue, as follows: one note for 100 dollars, due *December* 25, 1854; one for the same amount, due *December* 25, 1855; one for 100 dollars, due *December* 25, 1856, and one for the same amount, due *December* 25, 1857; that the last-named tract was a part of the land divised by the aforesaid will; that *William* and his mother, at the date of the sale, made him, *Hunt*, their joint deed for the premises, and when the justice before whom it was made, inquired how the notes were to be drawn, *William* answered, "make them payable to my mother." *Hunt* also stated that when he was summoned as garnishee, the four hundred dollars remained unpaid; but that since he was summoned, he lifted two of the notes, which he found in the hands of one *Henkle*, who stated that *Elizabeth Rider* had given him the notes in payment of a debt; and that in lieu of the two notes, he, *Hunt*, had executed to *Henkle* a note for 110 dollars; that when he purchased the 40 acres of *Elizabeth Rider*, *Martha Bales* had commenced her suit, in which, as before stated, she recovered against *William Rider;* and that about the time her judgment was obtained, the *Riders* left in the night time, and when last heard of were in western *Illinois*. *Hunt* further stated that, when he made the last purchase, he thought the suit of *Martha Bales* against *William Rider* had been discontinued; and that both purchases were made under the belief that the first tract belonged to *William* and the last to his mother; and that before he took a deed for the tract purchased of *Elizabeth Rider*, he consulted a lawyer in regard to the title.

*Riley*, a witness, testified that he was the son-in-law of *Elizabeth Rider;* that she lived with him some time after the sale of the land to *Hunt;* but he, witness, never heard her mention the notes on *Hunt*, or set up any claim against him.

The Court, to whom the cause was submitted, found that

Nov. Term,
1857.

HUNT
v.
COON.

the defendant, *Hunt*, was indebted to *William Rider* 400 dollars, due and payable as follows: &c.; and upon its finding, the Court, having overruled a motion for a new trial, rendered judgment, &c.

The case made by the record presents the question, was *Hunt* indebted to *William Rider* for the 400 dollars of purchase-money? Evidently *Rider* himself could not have enforced the collection of that demand. Because, though he may have been the owner of the land, he allowed his mother to sell it, and joined her in a deed to the purchaser. And having assented that the notes should be paid to her, he is estopped from setting up a claim for the purchase-money against *Hunt*. But suppose the evidence proved that *Rider* caused the notes to be thus executed with intent to defraud his creditors, still the law would not allow him to question his mother's title to the notes. Perhaps his creditors, under the facts of the case, might, instead of filing a complaint to annul the deed, be allowed to appropriate the purchase-money. But whether, in this instance, they could or not, is an inquiry not before us; because the pleadings make no issue in any degree involving the question of fraud, and the evidence, so far as it may conduce to prove the transaction fraudulent, must be considered irrellevant. It was, no doubt, incumbent on the plaintiffs below to prove *Hunt* indebted to *Rider*, the attachment-defendant. In this, it seems to us, they have utterly failed. It follows that the motion for a new trial should have been sustained.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*W. Grose*, for the appellants.

*E. B. Martindale, J. T. Elliott* and *J. H. Mellett*, for the appellees.